881 P.2d 723

Bryan R. RAMER, Plaintiff–Appellant,

v.

Carla PLACE–GALLEGOS, Ben Turrietta, Ben R. Gallegos, and Dareld Kerby, Defendants–Appellees.

No. 13885.

Court of Appeals of New Mexico.

July 27, 1994.

Bryan R. Ramer, pro se.

Nick D'Angelo, Gen. Counsel, Melinda L. Wolinsky, Deputy Gen. Counsel, Office of the Gen. Counsel, New Mexico Corrections Dept., Santa Fe, for defendants-appellees.

## OPINION

MINZNER, Chief Judge.

Plaintiff Bryan R. Ramer, acting pro se, appeals from the district court's order dismissing his complaint for failure to state a claim on which relief could be granted. We affirm.

### BACKGROUND

On July 27, 1989, Defendant Carla Place–Gallegos, a corrections officer at Central New Mexico Correctional Facility (CNMCF), filed an institutional misconduct report against Ramer. Disciplinary actions, including a six-month suspension of Ramer's family visitation, were taken as a result of that report. On March 28, 1990, Ramer filed his original complaint asserting malicious prosecution, defamation, conspiracy, and negligent failure to investigate. Ramer's complaint alleged that Defendant Place–Gallegos wrote the report "without probable cause, with a malicious intent." He further alleged that she wrote the report "to punish Ramer for complaining to her about her habit of sneaking through the living units catching other inmates, and himself in various stages of undress." Finally, he alleged that she accused him in the report of failing to obey an order to make his bed when he lacked any bed coverings with which to make it, and for creating a disturbance when he was not.

Defendants Ben Turrietta, Ben R. Gallegos, and Dareld Kerby are also CNMCF correctional officers. Turrietta was a witness at the disciplinary proceeding hearing, Gallegos was the hearing officer, and Kerby was their supervisor. Defendants moved to dismiss the complaint for failure to state a claim.

On June 25, 1990, Ramer moved to amend his complaint, a motion the district court granted. The first amended complaint recited the facts Ramer believed gave rise to a cause of action in tort without attempting, as he had in the original complaint, to identify specific torts as the theory underlying his claim.

Ramer's amended complaint again alleges that Defendant Place–Gallegos acted in retaliation for his complaint about her habits; he specifically alleged that he had "voiced his displeasure" after "one particularly egregious incident," after which she gave him an order he could not obey, and that he was innocent of the misconduct with which her subsequent misconduct report charged him. The amended complaint also alleges that Defendant Ben

Gallegos as the hearing officer was subjected to undue influence, and that he permitted Defendant Place–Gallegos to make additional allegations at the hearing, modified the charge, and contacted Defendant Turrietta, who gave false testimony. Finally, Ramer's amended complaint alleges that Defendant Kerby supervised and was responsible for all of the other defendants. Defendants again moved to dismiss for failure to state a claim.

The district court's January 13, 1992 letter opinion indicated that it intended to grant Defendants' motion to dismiss the complaint for failure to allege causes of action for malicious prosecution, conspiracy, and failure to state any other cause of action. The court subsequently entered an order dismissing the amended complaint with prejudice.

On appeal, Ramer asserts that the district court erred in dismissing the complaint because his first amended complaint states claims for abuse of process, invasion of privacy, and sexual harassment. In the alternative, Ramer asks this Court to fashion an appropriate claim based on the facts he has presented.

*DISCUSSION*

■ A motion to dismiss for failure to state a claim tests the legal sufficiency of that claim, not the supporting facts. *Gonzales v. United States Fidelity & Guar. Co.*, 99 N.M. 432, 433, 659 P.2d 318, 319 (Ct.App. 1983). Even where the plaintiff is pro se, the "pleadings, however inartfully expressed, must tell a story from which, looking to substance rather than form, the essential elements prerequisite to the granting of the relief sought can be found or reasonably inferred." *Birdo v. Rodriguez*, 84 N.M. 207, 209, 501 P.2d 195, 197 (1972). Only where the claimant cannot recover under any provable state of facts can the motion be properly granted. *Transamerica Ins. Co. v. Sydow*, 97 N.M. 51, 54, 636 P.2d 322, 325 (Ct.App. 1981).

■ Defendants initially argue that Ramer has abandoned his claims for invasion of privacy and sexual harassment because he did not argue these issues in his first memorandum in opposition to summary affirmance. In *State v. Gonzales*, 111 N.M. 590, 593, 808 P.2d 40, 43 (Ct.App.), *cert. denied*, 111 N.M. 416, 806 P.2d 65 (1991), this Court held that when a case is assigned to the general calendar, all previous calendar notices are superseded, reviving all issues properly raised in the docketing statement. Therefore, those issues may be briefed even if they were not argued in the *memorandum in opposition*. *Id.*

■ Ramer's claims for invasion of privacy and sexual harassment were not expressly stated in the original complaint, nor were they argued in response to Defendants' motions to dismiss. Ordinarily, a party cannot argue issues on appeal that were not presented to the trial court. *Phifer v. Herbert*, 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct. App.1993). However, a different rule applies when the party opposing dismissal seeks to call the appellate court's attention to arguments that might support the claim on a different theory. *Id.* Pursuant to this rule, we consider the claims for invasion of privacy and sexual harassment, but we conclude that the Tort Claims Act does not provide a relevant waiver of immunity for these claims.

■ We recognize that the legislature cannot immunize an individual from liability for injuries compensable under federal law. *See Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980). "The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett by and through Howlett v. Rose*, 496 U.S. 356, 375, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332 (1990).

■ We also recognize that under certain conditions an inmate may have a claim for violation of his or her constitutional right of privacy pursuant to 42 U.S.C.A. Section 1983 (1981). Such a claim may arise, for example, when institutional policy places inmates in the position of frequently being observed by guards of the opposite sex while the inmates are dressing and undressing or using the shower or toilet. *See, e.g., Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir.1982) ("plaintiff's statement that the male inmates were subject to a 'certain amount of viewing' by female guards does not necessarily fall short of a cognizable constitutional claim";

therefore, dismissal of entire action was error). *Cf. Forts v. Ward,* 621 F.2d 1210, 1216–17 (2d Cir.1980) (privacy interest of female inmates, entitling them to protection against involuntary viewing of private parts of the body by members of the opposite sex, satisfied by allowing curtain over window for several minutes at established intervals to allow prisoners to undress and attend to personal needs and by issuing suitable nighttime garments). *See also Bowling v. Enomoto,* 514 F.Supp. 201, 204–05 (N.D.Cal.1981) (court ordered correction authorities to fashion appropriate relief where uncontradicted affidavits alleged viewing by female guards of male inmates showering and using the toilet in a physical set-up where the viewing was likely to continue).

■ Nevertheless, both Ramer's original complaint and his amended complaint focus on the misconduct report, rather than Defendant Place–Gallegos' habits generally or the specific incident of which he complained to her. Ramer concedes CNMCF has a policy of allowing inmates to use a privacy curtain. Under these circumstances, we cannot say the trial court erred in determining that Ramer had not stated any unspecified cause of action. We do not construe *Phifer* as requiring the trial court to add allegations a plaintiff might have made in addition to the ones he or she did make or to speculate regarding the underlying theory. Unlike *Phifer,* this case would have required the trial court to read the complaint more than liberally to state a claim under Section 1983. The court would have been required to redraft it. *See Hudson v. Goodlander,* 494 F.Supp. 890, 891 (D.Md.1980) (neither inadvertent encounter nor regularly-scheduled visit by female employee would rise to level of constitutional deprivation of right to privacy).

In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), the United States Supreme Court said that:

in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:

(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Id.* 451 U.S. at 535, 101 S.Ct. at 1913. *See also Scott v. Board of Comm'rs,* 109 N.M. 310, 311, 785 P.2d 221, 222 (1989) (quoting *Parratt* ). Ramer has not couched his complaint in these terms. *Cf. Albright v. Oliver,* ─ U.S. ─, ─, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994) (suit filed under Section 1983 alleging deprivation of substantive due process under Fourteenth Amendment, a liberty interest to be free from criminal prosecution except upon probable cause); *Parratt,* 451 U.S. at 530, 101 S.Ct. at 1910 (respondent claimed he was denied property without due process of law when materials he had ordered by mail were lost due to the negligence of prison officials, who failed to follow normal procedures for receipt of mail). Rather, Ramer appears to have attempted to state a claim for a common-law tort. In fact, both the original and the amended complaints characterize the claim as "a Tort Claim pursuant to the New Mexico Tort Claims Act ... and any other further applicable actions or rights of the plaintiff." The trial judge understood the complaint as relying upon a waiver of immunity contained in the Tort Claims Act. So do we. Therefore, we analyze his complaint only under the Torts Claims Act.

■ The Tort Claims Act requires a waiver of immunity before any governmental entity or public employee can be sued in a tort action. NMSA 1978, § 41–4–4(A) (Repl. Pamp.1989). Defendants are charged with actions taken while discharging their responsibilities within the correctional facility. The torts for which immunity has been waived when committed by a law enforcement officer during the discharge of official duties are listed in NMSA 1978, Section 41–4–12 (Repl. Pamp.1989). Immunity under the Act is waived only for those torts specifically enumerated within the Act or for "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico." *Id.* Since sexual

harassment and invasion of privacy are not among the enumerated torts for which immunity is waived, we conclude that Ramer's arguments on appeal regarding sexual harassment and invasion of privacy provide no basis for reversal.

In addressing Ramer's argument that the amended complaint stated a claim for abuse of process, for which Section 41–4–12 does waive immunity, we assume that Ramer claims Defendant Place–Gallegos' actions amounted to abuse of process and that the other named Defendants either conspired to help her or were responsible for her actions. Defendants contend that he failed to demonstrate that their principal duties include those of a direct law enforcement nature as required by *Anchondo v. Corrections Department,* 100 N.M. 108, 111, 666 P.2d 1255, 1258 (1983). We agree. In *Callaway v. New Mexico Department of Corrections,* 117 N.M. 637, 641–642, 875 P.2d 393, 397–98 (Ct.App.1994), *cert. denied* 118 N.M. 90, 879 P.2d 91 (1994), this Court ruled that "corrections officers are not law enforcement officers under [NMSA 1978,] Section 41–4–3(D) [Repl.Pamp.1989]". Under *Callaway,* none of the Defendants are law enforcement officers, and thus immunity has not been waived under Section 41–4–12, whether or not Ramer stated a claim for abuse of process. Having come to this conclusion, we do not address Defendants' other arguments that Ramer's complaint failed to state a cause of action for abuse of process.

Finally, Ramer has asked this Court to fashion a claim based on the facts presented. Ramer's first amended complaint does not contain sufficient factual allegations to permit us to review the complaint for another claim. *Cf. Phifer,* 115 N.M. at 139, 848 P.2d at 9 (complaint contained allegations which, if liberally construed, would justify relief under the tort of outrage). When a motion to dismiss is granted, the Court "must accept the allegations as true and resolve all doubts in favor of the sufficiency of the pleading." *Id.* Even when the facts are viewed as being true, Ramer's complaint does not present the essential elements necessary for any colorable claim for which the Tort Claims Act has waived immunity.

*CONCLUSION*

The district court's order dismissing Ramer's first amended complaint, with prejudice, for failure to state a claim is affirmed.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.